**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM LOWERY, | ) | |
| | ) | Civil Action No. 23-1013 |
| Petitioner, | ) | |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | Re: ECF No. 1 |
| PATRICIA THOMPSON, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

For the reasons that follow, the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus

by a Person in State Custody (the "Petition"), ECF No. 1, will be denied.[1]  Likewise, a certificate

of appealability will be denied.

## II.    ANALYSIS

Petitioner seeks federal habeas relief from his 2017 convictions in the Court of Common

Pleas of Allegheny County, Pennsylvania, of the following crimes:

- Three counts of Aggravated Indecent Assault of a Child, in violation of 18 Pa. C.S.A. § 3125(b);

- One count of Criminal Solicitation – Involuntary Deviate Sexual Intercourse with a Child, in violation of 18 Pa. C.S.A. § 902(a);

- Three counts of Endangering the Welfare of Children, in violation of 18 Pa. C.S.A. § 4304(a);

- Three counts of Corruption of Minors, in violation of 18 Pa. C.S.A. § 6301(a)(1); and

- Six counts of Indecent Assault of a Person Less than 13 Years of Age, in violation of 18 Pa. C.S.A. § 3126(a)(7).

---

[1] The Parties consented to the jurisdiction of a United States Magistrate Judge on June 1, 2026. ECF Nos. 8 and 21.

ECF No. 1 at 1; ECF No. 9 at 1 and 2. See also Docket, Com. v. Lowery, No. CP-02-CR-0002846-2017 (C.C.P. Allegheny Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-02-CR-0002846-2017&dnh=oireeqr4tUbJduyBUv6ciA%3D%3D (last visited June 4, 2026)). On November 7, 2017, Petitioner was sentenced to an aggregate term of imprisonment of 14 ½ to 29 years. ECF No. 10-1 at 35-36.

### A.        Relevant Factual Background

The courts of Pennsylvania did not recite the facts underlying this case in explicit detail. In its Memorandum affirming denial of relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq., the Pennsylvania Superior Court provided the following information.

> In August of 2017, a jury convicted Appellant of three counts of aggravated indecent assault, one count of criminal solicitation, three counts of endangering the welfare of a child, three counts of corruption of minors, and six counts of indecent assault of a person less than 13 years of age. Appellant's convictions stemmed from evidence that he sexually abused three young girls who were being fostered by Appellant's girlfriend. The victims ranged in age from 2 to 9 when the abuse began. The girls did not tell each other about the abuse, or report it to any adult, for several years.

Com. v. Lowery, No. 515 WDA 2021, 2022 WL 3572983 (Pa. Super. Ct. Aug. 19, 2022).

The state trial court offered slightly more background in its February 14, 2018, Opinion on direct appeal.

> Three witnesses testified at trial that Appellant had sexually assaulted them. Diamond Ray testified that Appellant reached under her clothing and touched her vagina. (Transcript of Jury Trial, Aug:. 16-17, 2017, hereinafter TT at 40) She testified that he would move his hand back and forth, that this happened more than once, and that she was five years old at the time. (TT41-42) Novena Johnson testified that Appellant also put his hands down her pants and "played " with her vagina more than once when she was eight or nine. (TT 68-69) She stated he would have her lay down on her mother's bed and then touch her on the inside and outside of her vagina with his hands for minutes at a time while she cried. (TT 71-

2

> 72) Lastly, A.J., who was 15 years old at the time of trial, testified that when her mother was at work Appellant would rub her vaginal area while she was on her mother's bed. (TT 88) She stated this happened multiple times and Appellant would remove her bottoms and underwear and touch the outside of her vagina with his hands. (TT 89-90) These statements, found credible by the jury, support a finding beyond a reasonable doubt that Appellant sexually violated all three victims.

ECF No. 10-2 at 12-13.

One of the prosecution's witnesses at trial was Detective Michael Opferman. Trial Tr. dated Aug. 16-17, 2017. His testimony that he had met with the victims "[t]wo other times besides the initial one[,]" and that "they have been consistent with their prior statements[,]", id. at 142-44, underlies the instant Petition.

**B.      Relevant Procedural History**

Petitioner was convicted after a jury trial that took place on August 16 and 17, 2017, at which he was represented by counsel. Trial Tr. dated Aug 16-17, 2017. New counsel represented Petitioner at his sentencing hearing, which occurred on November 7, 2017.

Petitioner, through counsel, filed Post-Sentencing Motions on November 9, 2017, which were denied by the trial court on the same date. ECF No. 10-1 at 37-44. Petitioner submitted a notice of direct appeal on December 7, 2017. ECF No. 10-2 at 1. The state trial court issued its Opinion on direct appeal on February 14, 2018. Id. at 10.

Petitioner raised a single issue on direct appeal.

> Did the trial court err when it denied Appellant's Motion for Judgment of Acquittal where the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that Appellant sexually assaulted any of the victims in this matter?

ECF No. 10-3 at 7.

The Pennsylvania Superior Court affirmed Petitioner's conviction and sentence on January 24, 2019. Com. v. Lowrey, No. 1848 WDA 2017, 2019 WL 310821 (Pa. Super. Ct. Jan 24, 2019).

3

The record does not indicate that Petitioner sought allowance to appeal from the Pennsylvania Supreme Court, or petitioned for a writ of *certiorari* from the United States Supreme Court. Thus, Petitioner's conviction became final on Monday, February 25, 2019 – the first weekday that occurred 30 days after the Superior Court issued its decision. 28 U.S.C. § 2254(d)(1)(A); Pa. R.A.P. 1113(a); Pa. R.A.P. 107; and Pa. R.J.A. 107(b).

Petitioner filed a *pro se* PCRA petition, which was undated, but which was received by the state trial court on August 26, 2019.[2] ECF No. 10-6 at 1. The paper state court record lodged with this Court indicates that new counsel was appointed to represent Petitioner in his PCRA proceeding on August 28, 2019.

Through counsel, Petitioner submitted an amended PCRA petition on December 10, 2020. ECF No. 10-7 at 1. Petitioner raised the following two issues in his amended PCRA petition.

> I.    APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO RAISE THE ISSUE TO THE SUPERIOR COURT THAT THE TRIAL COURT ERRED IN OVERRULING PETITIONER'S OBJECTION AND PERMITTING DETECTIVE MICHAEL OPFERMAN TO TESTIFY AS TO THE VICTIMS' CREDIBILITY.
>
> II.    TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO PROPERLY OBJECT TO DETECTIVE OPFERMAN'S TESTIMONY THAT BOLSTERED THE VICTIMS' CREDIBILITY.

Id. at 8 and 13. After the prosecution filed a substantive answer on February 17, 2021, Id. at 23, the PCRA trial court issued its notice of intent to dismiss the amended PCRA petition without a hearing on February 18, 2021,[3] Id. at 42. The record does not indicate that Petitioner responded

---

[2] The record indicates that some motions practice took place in the trial court beginning on or about March 26, 2019. ECF No. 10-5 at 10-20. It is not necessary to determine whether any of these filings should have been construed as a PCRA petition, as doing so would not affect the timeliness of the instant Petition, nor whether the claims therein were exhausted.

[3] The notice of intent to dismiss is dated February 18, 2021, in its body, but is timestamped

to this notice, and the PCRA trial court dismissed the amended PCRA petition on March 19, 2021.

Id. at 43.

Petitioner timely submitted a notice of appeal on March 22, 2021.  ECF No. 10-8 at 1-2.

He raised the following two issues for consideration by the Superior Court.

> 1. Whether Appellate Counsel provided ineffective assistance by failing to raise the issue to the Superior Court that the Trial Court erred in overruling Appellant's objection and permitting Detective Michael Opferman to testify as to the victims' credibility?

> 2. Whether Trial Counsel provided ineffective assistance by failing to properly object to Detective Michael Opferman's testimony that bolstered the victims' credibility?

ECF No. 10-9 at 8.  The Superior Court affirmed the denial of PCRA relief in a Memorandum

issued on August 19, 2022.  Lowery, 2022 WL 3572983.

Petitioner timely sought leave for allowance to appeal from the Pennsylvania Supreme

Court on September 19, 2022.  ECF No. 10-11 at 13.  *Allocatur* was denied on February 15, 2023.

Com. v. Lowrey, No. 241 WAL 2022, 2023 WL 2008324 (Pa. Feb. 15, 2023).

### C.     Federal Habeas Petition

The Petition was received on June 8, 2023.  ECF No. 1.  It was mailed in an envelope

postmarked June 2, 2023.  ECF No. 1-6.  Thus, pursuant to the prisoner mailbox rule, the Petition

is entitled to an effective filing date of no later than June 2, 2023.  Burns v. Morton, 134 F.3d 109,

113 (3d Cir. 1998).  Petitioner followed with a supporting brief on June 15, 2023.  ECF No. 3.

In the Petition, Petitioner raises the following two claims for relief.

GROUND ONE:     Trial court erred and abused its discretion by overruling trial counsel's objection and permitting Detective Michael Opferman to testify as to the alleged victim's credibility.

---

February 22, 2021.  ECF No. 10-7 at 42.

GROUND TWO:    Trial counsel provided ineffective assistance of counsel by failing to properly object to Detective Opferman's testimony which bolstered the alleged victims' credibility at trial.

ECF No. 1 at 8 and 16.

Respondents answered the Petition on July 12, 2023. ECF No. 9. Despite being explicitly provided with a period of time to submit a traverse, as well as extensions of that period, see ECF Nos. 11, 14, and 17, Petitioner failed to file a traverse.

The Petition is ripe for consideration.

## D.    AEDPA Procedural Requirements

Before this Court addresses the merits of Petitioner's federal habeas claims, it will address whether the Petition fulfills the applicable requirements, as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### 1.    The AEDPA statute of limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed within the applicable statute of limitations. In 1996, Congress enacted the AEDPA, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to 28 U.S.C. § 2254. The applicable portion of the statute is as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No. 99-5, 2004 WL 825858, at *3 (W.D. Pa. Mar. 10, 2004)).

In the instant case, Respondents concede that the Petition is timely. ECF No. 9 at 13. A review of the record, as set forth above, supports this conclusion. Accordingly, this Court agrees that the Petition was timely filed.

### 2.    Exhaustion and procedural default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.

To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To fairly present a claim, "[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts." Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1231 (3d Cir. 1992).

Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. In turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying habeas relief. Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002). So too has the requirement under 42 Pa. C.S.A. § 9544(b) that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." Garcia v. Adams, No. 17-CV-5249, 2019 WL 8015127, at *6 (E.D. Pa. Aug. 27, 2019), report and recommendation adopted, 2020 WL 868200 (E.D. Pa. Feb. 20, 2020), aff'd sub nom. Garcia v. Sup't Forest SCI, No. 20-1570, 2022 WL 1153122 (3d Cir. Apr. 19, 2022) (citing cases).

Here, Respondents argue that both claims are procedurally defaulted. ECF No. 9 at 19.

9

### a.    Ground One is procedurally defaulted.

With respect to Ground One, Respondents are persuasive.  Petitioner's Ground One asserts that the

> [t]rial court erred and abused its discretion by overruling trial counsel's objection and permitting Detective Michael Opferman to testify as to the alleged victim's credibility[,]

ECF No. 1 at 8.

A review of the record reveals that this claim never was presented to the state courts for review.  While a similar ineffective assistance of appellate counsel claim was presented to, and addressed by, the Superior Court, see Lowrey, 2022 WL 3572983, at *1, that is not the claim that is presented in the instant Petition at Ground One.  Instead, Petitioner presents Ground One in his Brief as a due process violation claim – not one of effective assistance of counsel.  ECF No. 3 at 18.

Accordingly, Petitioner never fairly presented "[b]oth the legal theory and facts underpinning the federal claim" at Ground One to the Superior Court.  Evans, 959 F.2d at 1227.  Therefore, because the PCRA's one year statute of limitations would bar presenting Ground One to the state courts now, that claim clearly is procedurally defaulted.  See 42 Pa. C.S.A. § 9545(b).

That said, the United States Supreme Court has held that where a petitioner has to failed to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); Hull v.

Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993) (same).  The Court in <u>Coleman</u> further recognized "the important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them."  501 U.S. at 750.

The Supreme Court has defined "cause" as "some objective factor external to the defense." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list.  <u>Id.</u>

In order to show a fundamental miscarriage of justice, the United States Supreme Court requires a petitioner to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (quoting <u>Murray</u>, 477 U.S. at 496).  Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324.

With respect to cause and prejudice, Petitioner appears to argue in the Petition that cause exists to excuse any default of Ground One because his appellate counsel was ineffective for failing to raise it in the state courts.  ECF No. 1 at 14.  But in order for appellate counsel's alleged ineffectiveness to qualify as cause to set aside default, the underlying claim of ineffectiveness of counsel must both rise to a violation of a federal constitutional right, and itself  have been exhausted in state court. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000) (citing <u>Murray</u>, 477 U.S. at 489).

Here, the applicable ineffective assistance of appellate counsel claim that was exhausted in state court was based on failing to raise an issue of state evidentiary law – not the federal

11

constitutional issue that Petitioner now argues in his brief. See ECF No. 10-9 at 19-27 (arguing that appellate counsel was ineffective for failing to appeal on the basis that Defendant Opferman's testimony was not allowed under Rule 613(c) of the Pennsylvania Rules of Evidence). See also Lowrey, 2022 WL 3572983, at *4 (addressing the same). Because Petitioner failed to fairly present an ineffective assistance claim based on an alleged due process violation arising from Detective Opferman's testimony, it cannot provide cause for his failure to raise the underlying due process claim in state court.

Further, Petitioner does not present any argument or evidence that the miscarriage of justice applies to excuse default.

Accordingly, Ground One is procedurally defaulted. Petitioner does not provide any basis for that default to be excused. It will be dismissed.

**b.      Ground Two was exhausted in state court.**

Respondents further argue that Ground Two is procedurally defaulted as well, because it is "at the heart an issue of state evidentiary law." ECF No. 9 at 19.

Ground Two asserts that:

> [t]rial counsel provided ineffective assistance of counsel by failing to properly object to Detective Opferman's testimony which bolstered the alleged victims' credibility at trial.

ECF No. 1 at 16. A review of the record indicates that this ineffective assistance of trial counsel claim was presented to, and addressed by, the Superior Court. Lowrey, 2022 WL 3572983, at *1. Accordingly, Ground Two was exhausted, and was not procedurally defaulted. Thus, it will be addressed on the merits.

**E.      Merits**

The AEDPA provides the applicable deferential standard by which a federal habeas court must review the state court's disposition of a claim raised in a federal habeas petition.  See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in Section 2254(d).  The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of . . . clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court.  Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.  Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'"  Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)).  As the Supreme Court has further

explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Specific factual determinations by the state court that are subsidiary to the ultimate decision to grant post-conviction relief are subject to the presumption of correctness, and must be overcome by Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Lambert, 387 F.3d at 235-236. The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding." Id. at 236 n.19. If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence. See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

It is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. Ross v. Att'y Gen. of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008). This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts

acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, No. 07-CV-00021, 2010 WL 3636164, at *10 n.20 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

To the extent that a claim was fairly presented to the state courts but was not addressed on the merits, *de novo* review applies. Cone v. Bell, 556 U.S. 449, 472 (2009). The same review applies to a claim that resulted from a state court decision that was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) and (2).

### 1.   Ground Two will be denied.

At Ground Two, Petitioner asserts the following.

> Trial counsel provided ineffective assistance of counsel by failing to properly object to Detective Opferman's testimony which bolstered the alleged victims' credibility at trial.

ECF No. 1 at 16.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense.

15

Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Id. at 690.

The first prong of the Strickland test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. See also Harrington v. Richter, 562 U.S. 86, 104 (2001). A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong requires a petitioner to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Id. To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id. "It is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999).

In considering a claim of ineffectiveness of counsel, Pennsylvania uses a three-part effectiveness test.

> To plead and prove ineffective assistance of counsel a petitioner must establish: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act."

16

> Commonwealth v. Stewart, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. Id.

Future v. Ferguson, No. 16-2346, 2022 WL 2307095, at *8 (M.D. Pa. June 27, 2022), certificate of appealability denied sub nom. Future v. Sup't Benner Twp. SCI, No. 22-2419, 2022 WL 18536146, at *1 (3d Cir. Dec. 6, 2022). The United States Court of Appeals for the Third Circuit has found this test not to be contrary to Strickland. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). The Superior Court applied this standard to Ground Two in its Memorandum affirming the denial of PCRA relief. See Lowrey, 2022 WL 3572983, at *1. Accordingly, the Superior Court's analysis was not contrary to Strickland.

The Superior Court addressed this claim in its Memorandum affirming the denial of PCRA relief as follows.

> [This issue involves] his counsel's handling of the following testimony by Detective Opferman during the Commonwealth's direct-examination:
>
> > [The Commonwealth:] Do you recall on how many occasions you spoke with [the victims]?
> >
> > [Detective Opferman:]. Two other times besides the initial one.
> >
> > [The Commonwealth:] And your interaction with them, in talking to them about the facts of this case, have they been consistent in what occurred to them when they were younger?
> >
> > [Defense Counsel]: Your Honor, may we approach?
> >
> > THE COURT: You may.
> >
> > {Discussion at sidebar.}
> >
> > [Defense Counsel]: Your Honor, I am going to object to the question by [the Commonwealth] asking the Officer whether or not the statements have been consistent. I am assuming that she would be relying

17

on the hearsay exception regarding recent fabrication as the allowance for prior consistent statements. There has not been any allegation of recent fabrication, but fabrication throughout. And the case law is different regarding the two.

THE COURT: Okay, all of the witnesses who testified regarding the prompt reports would fall into the same category, essentially; and this particular witness, his testimony is with regard to the consistency of their disclosures to him.

The case law on victims of sexual assault is clear that they will be challenged with regard to their veracity, so prior consistent states are permitted, even in the Commonwealth['s] case.

[The Commonwealth]: Thank you, your Honor.

(End of side bar discussion.)

THE COURT: The objection is overruled.

***

[The Commonwealth]: Detective, you can answer the question.

[Detective Opferman:] Yes, they have been consistent with their statements.

N.T. Trial, 8/16/17-8/17/17, at 142-44.

In Appellant's first issue, he argues that his "[t]rial counsel provided ineffective assistance by failing to properly object to Detective Opferman's testimony regarding the victims' consistency." Appellant's Brief at 24. According to Appellant, Detective Opferman's "blanket statement that the victims [had] been consistent throughout" was "nothing more than improper bolstering of the victims' credibility." *Id.* Appellant observes that "[w]itnesses, expert or lay, are prohibited from testifying as to the credibility of other witnesses." *Id.* at 25 (citing ***Commonwealth v. Yockey***, 158 A.3d 1246, 1255 (Pa. Super. 2017)). He stresses that it "has been a longstanding principle in Pennsylvania that credibility determinations are to be left to the jury, and to have a witness testify to another witness'[s] credibility is irrelevant and prejudicial." *Id.* (citing ***Commonwealth v. McClure***, 144 A.3d 970, 977 (Pa. Super. 2016) (citation omitted)).

18

Appellant recognizes that a witness's prior consistent statement is admissible to rehabilitate their credibility under Pennsylvania Rule of Evidence 613(c).[] He contends, however, that "Detective Opferman's testimony did not constitute a prior consistent statement [but], instead, it was improper testimony as to the victims' credibility." Appellant's Brief at 28-29. He elaborates:

> Detective Opferman was not testifying as to a specific statement that [any] of the victims previously said to him in order to prove that it was consistent with their testimony at trial. Rather, Detective Opferman was giving a blanket statement as to the victims' credibility. In essence, by Detective Opferman['s] testifying to the jury that the victims "have been consistent with their statements," the Commonwealth introduced improper testimony as to the victims' credibility under the guise of a prior consistent statement.

*Id.* at 28. Therefore, Appellant concludes that there is arguable merit to his claim that trial counsel should have objected to the detective's testimony as improper bolstering of the victims' credibility.

In rejecting this argument, the PCRA court concluded that Detective Opferman's testimony was not impermissible commentary on the victims' credibility, explaining:

> Detective Opferman testified that he spoke with the three minor victims in this case on three occasions, and that they were consistent on each occasion in relating to the [d]etective what had happened to them. [N.T. Trial] at 141-143[ ]. Taken at face value, Detective Opferman's statement does not bolster the credibility of the victims. The jury could have concluded that the children's consistency was the result of a well-rehearsed lie just as easily as they could have concluded that the children told the truth. Detective Opferman did not opine as to the children's credibility or whether they should be believed.

PCRA Court Opinion (PCO), 6/21/21, at 3-4.

We discern no error or abuse of discretion in the PCRA court's decision. As the Commonwealth correctly observes,

> in cases where this Court has found there was improper lay witness bolstering of a witness's

19

testimony, the facts are markedly different. For example, in *Yockey*, this Court found that the trial court committed harmless error by permitting a witness to testify that another witness was "lying[.]" [ ] *Yockey* ... 158 A.3d at 1255. Similarly, in *McClure*, a police detective testified that he did not believe the explanation given by the defendant daycare worker concerning a child's injuries. This Court found the detective's testimony to be improper bolstering. *McClure*, ... 144 A.3d at 977. *See also Commonwealth v. Loner*, 609 A.2d 1376, 1377 (Pa. Super. 1992) (holding that [the] child caseworker's testimony that she believed victim's report of abuse improperly bolstered the victim's veracity).

\*\*\*

[I]n the instant case, Detective Opferman did not testify that he believed the victims or disbelieved [A]ppellant. Detective Opferman offered no opinion whatsoever regarding the credibility of the victims in this case. The testimony at issue, "Yes, they have been consistent with their statements," (N[.]T[. Trial] at 143), is not an opinion regarding credibility, it is Detective Opferman's perception that the victims relayed the same information to him during each time he interviewed them. As the controlling case law makes clear that Detective Opferman's testimony was admissible, [A]ppellant cannot demonstrate that the trial court committed an abuse of discretion in admitting it.

Commonwealth's Brief at 24-25, 26-27.

We agree with the PCRA court and the Commonwealth that Detective Opferman's testimony did not impermissibly bolster the victims' credibility. Thus, we conclude that Appellant's claim that his trial counsel should have objected to the at-issue testimony on this basis lacks arguable merit.

In any event, we would also conclude that Appellant has not demonstrated he was prejudiced by counsel's purported error in this regard. Appellant's entire argument regarding the prejudice he purportedly suffered consists of the following few sentences:

There is a reasonable probability that the results of the trial would have been different had trial counsel

20

> properly objected. Had counsel provided the trial court with the correct rationale, [the trial court] would have granted Appellant's objection. Without hearing Detective Opferman improperly testify as to the victims' credibility, the jury would have found Appellant not guilty.

Appellant's Brief at 29-30.

> For the above-stated reasons, we would conclude that the trial court would not have granted an objection to Detective Opferman's testimony on the basis that it was impermissible bolstering of the victims' credibility. Moreover, even if the court would have granted such an objection, and struck the detective's testimony, Appellant's bald statement that the jury would have found him not guilty is insufficient to demonstrate a reasonable probability that the result of the proceeding would have been different. Therefore, we discern no error in the PCRA court's dismissal of Appellant's first ineffectiveness claim.

Id. at *2-4 (internal footnote omitted).

In light of the Superior Court's findings that the underlying claim raised in state court lacked arguable merit, and that Petitioner had failed to establish prejudice, id. at 4, this Court interprets the Superior Court's decision to rest on both prongs of the Strickland test.

Upon review of the record, including the entire trial transcript, the undersigned cannot conclude that the Superior Court's finding that Petitioner had not demonstrated prejudice was contrary to, or an unreasonable application of Strickland, or was based on an unreasonable factual determination. Detective Opferman's statement at issue was brief and presented without elaboration. He was not asked follow-up questions about it by the prosecution on direct examination, and instead was presented for cross examination immediately after he made it. Trial Tr. dated Aug 16-17, 2017, at 143-44. Moreover, each of Petitioner's accusers testified at trial, and were cross-examined with respect to prior statements involving Petitioner, their prior interactions with Petitioner, and the timing of their accusations. Further, after the close of testimony, the jury was given a prompt complaint instruction. Id. at 264.

Here, in light of the evidence of record, Petitioner has failed to meet his burden to demonstrate that the Superior Court's application of Pennsylvania's equivalent of the prejudice prong of the <u>Strickland</u> test was contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Thus, relief based on Ground Two of the Petition will be denied.

**F.      Certificate of Appealability**

A certificate of appealability will be denied, as jurists of reason would not debate that Petitioner has failed to show entitlement to relief. <u>See also</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000); 28 U.S.C. § 2253(d). As to the claims denied on procedural ground, jurists of reason would not debate that this Court was correct in its procedural ruling and/or that the defaulted claims state a valid claim of a denial of a constitutional right. <u>Slack</u>, 529 U.S. at 474.

**III.      CONCLUSION**

For the foregoing reasons, the Petition, ECF No. 1, will be denied, and a certificate of appealability likewise will be denied.

An appropriate Order follows.

BY THE COURT,

Date: June ___4___, 2026

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:      William Lowery
NF-3746
SCI Albion
10745 Route 18
Albion, PA 16475-0001

All counsel of record via CM-ECF